UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
Charlotte Division

| | |
|---|---|
| In Re:<br><br>**ACME PETROLEUM and FUEL COMPANY, et al.,**<br><br>        Debtors. | Case No. 02-34041<br>Chapter 11<br><br>Jointly Administered |
| **F.C. TALLY ROBERTS, et al.,**<br><br>        Plaintiffs,<br><br>v.<br><br>**BDO SEIDMAN, LLP,**<br><br>        Defendant. | Adv. Proc. 04-3101<br><br>JUDGMENT ENTERED ON JAN 1 3 2005 |

## ORDER GRANTING MOTION TO DISMISS

This matter is before the court on the Motion to Dismiss or in the Alternative to Compel Arbitration of BDO Seidman, LLP ("BDO Seidman"), and the response thereto of the plaintiffs. After consideration of the motion, the responses thereto, and the arguments of counsel, the court has concluded that BDO Seidman's Motion to Dismiss should be granted because the plaintiffs have failed to state a claim upon which relief can be granted. Because the court is granting BDO Seidman's Motion to Dismiss, the Motion in the Alternative to Compel Arbitration is denied as moot.

**I. PROCEDURAL HISTORY**

1. Plaintiffs are shareholders of Acme Services, Inc. The defendant provided accounting and audit services to Acme Services, Inc., which is a debtor in a Chapter 11 proceeding, along with Acme

Properties Limited Partnership, Acme Retail, Inc., Acme Properties, Inc., Moore Oil Company, Inc., and Acme Petroleum and Fuel Company (the "Acme Debtors"). On October 24, 2003, the court entered an Order confirming the Second Amended Plan of Liquidation of the Acme Debtors, and the plan became effective November 4, 2003.

2. The plaintiffs filed this action in the Richland County Court of Common Pleas in South Carolina, shortly after confirmation of the Acme Debtors' plan of reorganization.

3. BDO Seidman filed its Answer, removed this action to the United States District Court for the District of South Carolina, and moved to transfer venue of this case to the United States District Court for the Western District of North Carolina. The plaintiffs moved to remand this action to South Carolina state court or, in the alternative, for the South Carolina federal court to abstain.

4. The District Court denied plaintiffs' motion and granted BDO Seidman's motion to transfer venue. Following the transfer of this case to the United States District Court for the Western District of North Carolina, the District Court entered an order transferring the case to this court for consideration as part of the bankruptcy proceedings of the Acme Debtors.

5. BDO Seidman subsequently filed in this court its Motion to Dismiss or in the Alternative to Compel Arbitration in which it argues that the plaintiffs' case should be dismissed because (1)

the nature of the plaintiffs' claim is derivative and the plaintiffs' Complaint fails to satisfy the pleading requirements for a derivative suit; (2) plaintiffs have failed to join a necessary and indispensable party; and (3) plaintiffs have failed to allege the required elements of special duty owed or distinct injury to them in order to state a claim for individual recovery.

## II. STANDARD OF REVIEW

6. A complaint should be dismissed for failure to state a claim upon which relief may be granted if "after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." De'Lonta v. Angelone, 330 F.3d 630, 633 (4th Cir. 2003).

## III. ALLEGATIONS OF THE COMPLAINT

7. In their Complaint, the plaintiffs allege that each of them was at all relevant times a shareholder in Acme Services, Inc. and collectively own all of the stock in the company. See Complaint, ¶ 7. Acme Properties, Inc. is a wholly owned subsidiary of Acme Services, Inc. and is the general partner of APLP. See id., ¶¶ 10, 12.

8. BDO Seidman, its agents and employees, provided accounting services and business advice to Acme Services, Inc., its subsidiaries, and affiliates beginning in the mid-1990's. See id.,

¶ 17. For example, BDO Seidman had previously been involved in making recommendations for the organization of company structures, including the structure of APLP. See id., ¶ 16. In addition, BDO Seidman had, on various occasions, solicited the individual investment accounts of one or more of the plaintiffs. See id., ¶ 18.

9. BDO Seidman entered into an agreement with Acme Services, Inc. to perform an audit of the June 30, 2000, financial condition of the company in accordance with generally accepted accounting principles. See id., ¶ 14. BDO Seidman was aware and had notice that its work would be shared with, and relied upon, by the plaintiffs in this action. See id., ¶ 15.

10. Plaintiffs allege that BDO Seidman breached its duties to Acme Services, Inc., Acme Properties, Inc., and the plaintiffs in one or more of the following ways: (a) failing to meet the applicable standard of care for accountants and consultants in performing audits of balance sheets and related statements of income and comprehensive income, stockholders' equity, and cash flows in accordance with generally accepted auditing standards; (b) failing to notify the plaintiffs of irregularities which it discovered with respect to accounts payable and other matters; (c) failing to timely notify management of recognized problems in adjusting balance sheets; (d) failing to advise management of problems with Acme entities; and (e) advising management "and

understanding that management would share the advice with . . . plaintiffs . . . that the study and evaluation performed by [BDO Seidman] disclosed no condition that it believed to be a material weakness, when in fact, its agent(s) and/or employee(s) had discovered one or more material weaknesses." See id., ¶ 20.

11. Plaintiffs contend that as a result of these alleged breaches by BDO Seidman, plaintiffs have "suffered injury in the loss of value of their stock." See id., ¶ 13.

12. Finally, the plaintiffs allege that "Acme Properties, Inc. has been advised of claims available to Acme Properties Limited Partnership, and Acme Properties, Inc., as the general partner of Acme Properties Limited Partnership, however, for reasons unknown to the plaintiffs, neither Acme Services, Inc., Acme Properties, Inc., nor Acme Properties Limited Partnership have initiated or prosecuted any action against the defendant for recovery of damages and injuries suffered by them, and their respective owners." Id., ¶ 12.

## IV. DISCUSSION

### A. Post-Confirmation Jurisdiction

13. At the hearing on BDO Seidman's Motion to Dismiss or in the Alternative to Compel Arbitration, the court invited counsel to address whether this court had post-confirmation "related to" jurisdiction over this adversary proceeding in light of the Third Circuit's recent decision in Resorts Int'l Fin., Inc., et al. v.

5

Price Waterhouse & Co., LLP, 372 F.3d 154 (3rd Cir. 2004). In Resorts Int'l Fin., the Trustee for a litigation trust, which was established pursuant to the Plan to pursue litigation on behalf of certain creditors, retained Price Waterhouse post-confirmation to provide auditing and tax-related services to the litigation trust. Almost seven years after plan confirmation, the Trustee filed an adversary proceeding against Price Waterhouse, the primary allegation of which was that the accounting firm had erroneously reported in its audit that funds belonged to the debtor rather than to the litigation trust. See id. at 156-157.

14. The Third Circuit held that the accounting malpractice claims brought by the Trustee on behalf of the litigation trust did not come within the post-confirmation "related to" jurisdiction of the bankruptcy court because the matter lacked the required "close nexus" to the bankruptcy plan or proceeding. See id. at 169.

15. The "close nexus" standard is a variation of and a more narrow test than the test for "related to" jurisdiction set forth by the Third Circuit in Pacor, Inc. v. Higgins, 743 F.2d 984, 994 (3d Cir. 1984). The Pacor test for "related to" jurisdiction is whether "the outcome of [the] proceeding could conceivably have any effect on the estate being administered in bankruptcy . . . . An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options or freedom of action (either positively or negatively) and which in any way impacts upon the

6

handling and administration of the bankrupt estate." Pacor, 743 F.2d at 994 (citations omitted).

16. In A.H. Robins Co. v. Piccinin, the Fourth Circuit adopted the Pacor test for "related to" jurisdiction. See A.H. Robins Co. v. Piccinin, 788 F.2d 994, 1002 n. 11 (4th Cir. 1986), cert. denied, 479 U.S. 876 (1986); see also In re: Celotex, 124 F.3d 619, 625-26 (4th Cir. 1997). And the Fourth Circuit has applied the Pacor test for "related to" jurisdiction in the post-confirmation context without adopting the more narrow "close nexus" standard. See Bergstrom v. Dalkon Shield Claimants Trust, 86 F.3d 364, 372 (4th Cir. 1996); Azalea Gardens Board & Care, Inc. v. WRH Mortgage, Inc., 215 F.3d 1317, 2000 WL 699676, **2 (4th Cir. 2000). Consequently, the test this court is to use is the Pacor "related to" test, rather than the "close nexus" test.

17. In applying the Pacor test to this case, the court finds that this adversary proceeding is "related to" the bankruptcy plan and proceeding and that this court has post-confirmation jurisdiction because it clearly impacts the handling and administration of this bankruptcy estate. It involves claims that are reserved in the confirmed plan and are a part of this bankruptcy proceeding. Moreover, unlike the claims that arose post-confirmation in Resorts Int'l Fin., the facts on which the subject claims are based arose pre-petition and are derivative of claims of the bankrupt entities rather than a litigation trust.

And, unlike the non-debtor claims at issue in <u>Resort Int'l Fin.</u>, the claims plaintiffs seek to pursue are identified estate assets. In addition, this action was originally commenced by the plaintiffs on November 24, 2003, approximately one month to the day after the entry of the order confirming the Debtors' Plan on October 24, 2003. In contrast, the Trustee in <u>Resorts Int'l Fin.</u> did not initiate the adversary proceeding against Price Waterhouse until almost seven years post-confirmation.

20. The assignment of the claim to creditors who also continue to seek satisfaction in the ongoing bankruptcy does not remove the claims from the bankruptcy court's jurisdiction. Unlike in <u>Resorts Int'l Fin.</u>, these creditors have not relinquished their status as creditors of the bankrupt entities. If they choose to pursue claims again BDO Seidman and are successful, it will result in a pro rata reduction of their claims in the bankruptcy.

19. Finally, even if this court adopted the "close nexus" standard of the Third Circuit, the court finds that for the reasons enumerated above, such a close nexus exists and that the plaintiffs claims come within the court's post-confirmation "related to" jurisdiction.

**B.** <u>**Failure to State a Claim**</u>

20. Having concluded that this case comes within the court's post-confirmation "related to" jurisdiction, the court has also concluded that the plaintiffs' Complaint must be dismissed for

failure to state a claim upon which relief can be granted because of the absence of a special duty owed or distinct injury to the plaintiffs which is required to state a claim for individual recovery.

21. In a case that is directly on point to this case, <u>Barger v. McCoy Hillard & Parks</u>, the North Carolina Supreme Court reiterated the well-established general rule "that shareholders cannot pursue individual causes of action against third parties for wrongs or injuries to the corporation that result in the diminution or destruction of the value of their stock." See <u>Barger v. McCoy, Hillard & Parks</u>, 346 N.C. 650, 658, 488 S.E.2d 215, 219 (1997) (citations omitted).

22. In <u>Barger</u>, shareholders of The Furniture House, Inc. ("TFH") brought suit against an accounting firm that had allegedly provided incorrect financial information about TFH, after which TFH filed bankruptcy and was liquidated. The North Carolina Supreme Court, relying upon the well-established general rule quoted above, held that in their capacity as shareholders, the plaintiffs could not bring an action against the accounting firm for the lost value of their stock. "[T]he right to sue defendants for losses plaintiffs suffered as shareholders belonged solely to TFH and perished when the corporation was dissolved in bankruptcy." <u>Barger</u>, 346 N.C. at 660.

23. As in <u>Barger</u>, the only injury or damage plaintiffs have alleged they have suffered as the result of "wrongful action or inactions" of BDO Seidman is "the loss of value of their stock." <u>See</u> <u>Complaint</u>, ¶ 13. They have not alleged a direct relationship with BDO Seidman or a duty owed by it directly to them. Therefore, their claims are derivative.

24. The right to sue BDO for these alleged claims belongs to Acme Services, Inc., which is the subject of these bankruptcy proceedings, and all claims against BDO Seidman arising out of services it provided to Acme Services, Inc. were expressly reserved by Acme Services, Inc. in the bankruptcy. <u>See</u> Confirmation Order of October 24, 2003, at Section 4(x) [Docket No. 656], Case No. 02-34041. In fact, this court entered an Order on October 21, 2004, in which the Liquidating Trust, which was established pursuant to the Second Amended Plan of Liquidation of the Acme Debtors, assigned to the Post-Confirmation Committee all avoidance and other causes of action vested in the operation of the Debtors, including any claims or causes of action against BDO Seidman. And, on December 17, 2004, the Post-Confirmation Committee filed adversary proceeding 04-3370 against BDO Seidman and others alleging, amongst other things, aiding and abetting breach of fiduciary duty against BDO Seidman.

25. Thus, because the only injury or damage plaintiffs' seek to pursue as a result of alleged breaches of duties by BDO Seidman

is "the loss of value of their stock," the plaintiffs have failed to state a claim upon which relief can be granted.

26. There are two exceptions to the rule that a shareholder cannot sue for injuries to his corporation: "(1) where there is a special duty, such as a contractual duty, between the wrongdoer and the shareholder, and (2) where the shareholder suffered an injury separate and distinct from that suffered by other shareholders." Barger, 346 N.C. at 658 (citations omitted).

27. In this case, plaintiffs' Complaint does not allege facts that show any special duty allegedly owed them by BDO. Plaintiffs' alleged injuries in the Complaint relate solely to work done by BDO Seidman on behalf of or pursuant to an agreement with Acme Services, Inc. Thus, plaintiffs have failed to fit their claims within the "special duty" exception to the general rule stated in Barger. In addition, the plaintiffs fail to fit their claims within the second exception to the general rule stated in Barger because the only injury they have alleged as shareholders is the loss of value of their shares.

C. **Other Grounds for Dismissal**

28. In addition to the arguments discussed above, BDO Seidman contends that the plaintiffs complaint should be dismissed because (1) under North Carolina law, their claims are derivative and their Complaint fails to state a claim upon which relief can be granted because they have not pleaded the required elements of a

11

derivative suit and (2) plaintiffs have failed to join a necessary and indispensable party. The court is persuaded by the arguments contained in the defendant's brief and finds that each of these is an independent basis for dismissal. However, because the court has concluded that plaintiffs' Complaint should be dismissed for failure to state a claim for individual recovery, it will not further discuss those defenses. Finally, the court is persuaded that if the Complaint stated a claim, it would have to be determined by way of arbitration. But, because the court has determined that the Complaint must be dismissed, that motion must be denied as moot.

It is therefore **ORDERED** as follows:

1. Defendant's Motion to Dismiss is GRANTED;

2. Defendant's Motion in the Alternative to Compel Arbitration is denied as MOOT; and

3. Plaintiffs' Complaint against defendant BDO Seidman, LLP, is DISMISSED.

_____
**George R. Hodges
United States Bankruptcy Judge**